**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| AKOUSTIS TECHNOLOGIES, INC., AKOUSTIS, INC., CORNELL UNIVERSITY AND CORNELL RESEARCH FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> QORVO, INC., <br><br> Defendant. | Case No. 2:23-cv-00180 <br><br> JURY TRIAL DEMANDED |

**DEFENDANT QORVO, INC.'S MOTION TO DISMISS PLAINTIFFS'
<u>FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1
II. BACKGROUND .................................................................................................................. 2
   A. The Parties..................................................................................................................... 2
   B. Qorvo Sues Akoustis For Stealing Qorvo's Technology ................................................ 3
   C. Akoustis Files This Retaliatory Litigation And Qorvo Moves to Dismiss ..................... 3
   D. Plaintiffs Are In Receipt of Substantive Discovery From Qorvo and its Third-Party Suppliers ................................................................................................................................ 5
   E. Plaintiffs Fail to Identify Facts Showing Infringement of Method Claims ..................... 5
III. ARGUMENT ....................................................................................................................... 6
   A. Plaintiffs fail to plausibly allege direct infringement....................................................... 7
      1. The FAC fails to plausibly allege that Qorvo performs any steps of the claimed method................................................................................................................................... 7
      2. The FAC is devoid of factual allegations concerning performance of step b) ............. 8
   B. Plaintiffs fail to plausibly allege indirect infringement................................................... 10
   C. Plaintiffs' Boilerplate Is Unacceptable At This Stage of the Case ............................... 12
IV. CONCLUSION................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

Cases

*Addiction and Detoxification Institute L.L.C. v. Carpenter*
620 Fed. Appx. 934 (Fed. Cir. 2015) ..................................................................................2, 10

*American Vehicular Sciences LLC v. Mercedes–Benz U.S. International, Inc.*
2014 WL 10291478 (E.D. Tex. Feb. 7, 2014) ..........................................................................12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........................................................................................................6, 7, 10

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ........................................................................................................6, 7, 10

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*
681 F.3d 1323 (Fed. Cir. 2012) ...................................................................................................7

*Chapterhouse, LLC v. Shopify, Inc.*
No. 18-cv-0300, 2018 WL 6981828 (E.D. Tex. Dec. 10, 2018) .............................................10

*DSU Med. Corp. v. JMS Co., Ltd.*
471 F.3d 1293 (Fed. Cir. 2006) ................................................................................................10

*i4i Ltd. P'ship v. Microsoft Corp.*
598 F.3d 831 (Fed. Cir. 2010) ....................................................................................................9

*Joy Techs., Inc. v. Flakt, Inc.*
6 F.3d 770 (Fed. Cir. 1993) ........................................................................................................7

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*
714 F.3d 1277 (Fed Cir. 2013 ....................................................................................................7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*
869 F.3d 1372 (Fed. Cir. 2017) ..................................................................................................7

*NXP U.S. v. MediaTek Inc.*
No. 21-cv-00318, 2022 WL 799071 (E.D. Tex. Mar. 15, 2022) .............................................11

*Ormco Corp. v. Align Tech., Inc.*
463 F.3d 1299 (Fed. Cir. 2006) .........................................................................................2, 7, 9

*S.A.R.L. v. Apple Inc.*
Case No. 6:14-cv-751-JDL, 2015 WL 5000397 (E.D. Tex. June 3, 2015) .............................11

Statutes

35 U.S.C. § 271 ........................................................................................................................6

35 U.S.C. § 271(b) ..................................................................................................................10

Other Authorities

Fed. R. Civ. P. Rule 11 ............................................................................................................6

I.      INTRODUCTION

Defendant Qorvo, Inc. ("Qorvo") respectfully moves the Court to dismiss this case for failure to state a claim under Rule 12(b)(6).

As set forth in Qorvo's June 26, 2023 Motion to Dismiss, Plaintiffs Akoustis Technologies, Inc. and Akoustis, Inc.'s (collectively, "Akoustis") original Complaint in this action was filed in retaliation against Qorvo for bringing trade secret claims against Akoustis in Delaware. The Delaware litigation has since resulted in a jury verdict in favor of Qorvo, finding that Akoustis willfully and maliciously misappropriated thirty seven (37) Qorvo trade secrets and infringed two (2) Qorvo patents.

The original Complaint was filed by Akoustis to use as leverage in its dispute with Qorvo, but was legally deficient because: (i) Akoustis, as a mere licensee, cannot bring this suit in its name only; and (ii) Akoustis failed to allege facts adequate to state a claim of either direct or indirect infringement by Qorvo. Qorvo's June 26, 2023 Motion to Dismiss sought dismissal for each of these reasons.

Almost a year later, on May 24, 2024, Akoustis sought leave to add the Cornell entities (the patent owner) as parties, which the Court granted on July 24, 2024. Akoustis and Cornell thereafter jointly filed the First Amended Complaint ("FAC") on July 26, 2024. The only substantive difference between the original Complaint and the FAC is the addition of Cornell as a named Plaintiff. The FAC did not update or modify its deficient infringement allegations against Qorvo—despite being on notice of the deficiencies and being in possession of substantial discovery from Qorvo and its third party suppliers.

Specifically, the FAC fails to allege facts adequate to state a claim of direct infringement against Qorvo. As set forth below, the asserted patent includes only method claims directed to a manufacturing process. Plaintiffs, however, do not allege that **Qorvo** practices the claimed

-1-

manufacturing method. *See* FAC (Dkt. 124), ¶¶34-53. Instead, Plaintiffs allege that unidentified third parties ("partners and suppliers") practice the claimed method and then sell the resulting products (epitaxial wafers) to Qorvo for inclusion as components in products that Qorvo sells. *Id.*, ¶54. These allegations are insufficient as a matter of law for direct infringement against **Qorvo**. *See, e.g.*, *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus").

Further, the FAC's allegation of indirect infringement against Qorvo is also inadequate. To state a claim for indirect infringement, Plaintiffs must allege nonconclusory facts that support a reasonable inference that Qorvo knowingly induced third parties to use the manufacturing process claimed in the asserted patent. But the FAC is entirely devoid of any such facts. Instead, in a single-paragraph allegation, Plaintiffs recite a boilerplate list of acts of inducement (e.g., advertising a product, providing instructions) that have no applicability in the context of inducing a third party to perform the steps of a manufacturing process. Such conclusory and generic allegations, untethered to the context of this case, are insufficient. *See, e.g.*, *Addiction and Detoxification Institute LLC v. Carpenter,* 620 F. App'x. 934, 938 (Fed. Cir. 2015) ("Simply repeating the legal conclusion that Defendants induced infringement or contributorily infringed does not plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'").

In view of the foregoing failures, the FAC should be dismissed.

## II.   BACKGROUND

### A.   The Parties

Qorvo is a global supplier of semiconductor solutions. *See* FAC, ¶12. Qorvo maintains a design, sales, support, and manufacturing facility in Richardson, Texas. *Id.*, ¶18. Akoustis

Technologies, Inc. and Akoustis, Inc. are both Delaware corporations with their principal places of business in North Carolina. *Id.*, ¶¶7, 8. On information and belief, Cornell University is a non-profit education corporation located in Ithaca, New York and Cornell Research Foundation, Inc. is (a wholly owned subsidiary of Cornell University and a New York non-profit corporation with a principal place of business in Ithaca, New York. *Id.*, ¶¶5, 6.

### B. Qorvo Sues Akoustis For Stealing Qorvo's Technology

Former Qorvo employees formed Akoustis to compete against Qorvo in the market for bulk acoustic wave ("BAW") filters. Rather than developing its own technology and competing fairly with Qorvo, Akoustis adopted a series of anticompetitive practices to shortcut the time needed to enter the BAW market. On October 4, 2021—nearly 18 months before Akoustis filed this case—Qorvo sued Akoustis in Delaware to stop these anticompetitive practices (the "Delaware Action").

On February 8, 2023, Qorvo filed an amended complaint in the Delaware Action asserting claims for trade secret misappropriation. The amended complaint alleges that Akoustis misappropriated no fewer than 86 trade secrets. Following the filing of the amended complaint, Qorvo continued to discover additional evidence of Akoustis' misappropriation scheme. In total, Qorvo located **more than 1,000** confidential and proprietary Qorvo documents in Akoustis' files.

On May 17, 2024, after eight (8) days of trial, the jury in the Delaware Action found in favor of Qorvo and held Akoustis liable for the willful and malicious misappropriation of thirty seven (37) Qorvo trade secrets in addition to the infringement of two (2) Qorvo patents.

### C. Akoustis Files This Retaliatory Litigation And Qorvo Moves to Dismiss

After its scheme to steal Qorvo's trade secrets was revealed in the Delaware Action, Akoustis was desperate to find a way to manufacture leverage over Qorvo. On April 20, 2023,

Akoustis filed this retaliatory lawsuit accusing Qorvo of infringing U.S. Patent No. 7,250,360 (the "'360 patent").

There were two readily-apparent deficiencies in Akoustis' original Complaint, however. *First*, Akoustis conceded it does not own the '360 patent but is rather a mere licensee of Cornell. *See* Dkt. 1, ¶21. While Akoustis originally alleged that it had the right to bring the original Complaint in its name only (*id*.), this was not supported by the actual provisions of the License Agreement between Cornell and Akoustis when it was eventually produced on May 25, 2023 (it was not included with the Complaint). *Second*, Akoustis failed to allege facts adequate to state a claim of either direct or indirect infringement by Qorvo, for at least the reasons discussed herein (the FAC repeats the same infringement accusations as the original Complaint).

Accordingly, on June 26, 2023, Qorvo filed a Motion to Dismiss Akoustis' original Complaint under Rule 12(b)(6) as to both deficiencies. Dkt. 17. The Motion was fully briefed by July 24, 2023. Almost one year after Qorvo filed its Motion to Dismiss, Akoustis filed on May 1, 2024, a Motion for Leave to add patent owner Cornell as a party via the FAC. Dkt. 84. The Court granted this Motion on July 24, 2024. Dkt. 121. Qorvo understands that the filing of the FAC has mooted Qorvo's original Motion to Dismiss without the Court addressing the merits of the infringement allegations. Plaintiffs (Akoustis and Cornell) thereafter filed the FAC on July 26, 2024. The only substantive difference between the original Complaint and the FAC is the addition of Cornell as a named Plaintiff. *See,* e.g., Dkt.84-5 (redline comparison between original Complaint and FAC). Despite months of discovery from Qorvo and its third party suppliers of the accused components, and despite being on notice of the deficiencies in their infringement allegations, Plaintiffs did not add any additional facts to the FAC supporting the allegations of direct and indirect infringement against Qorvo.

### D. Plaintiffs Are In Receipt of Substantive Discovery From Qorvo and its Third-Party Suppliers

Qorvo has produced 48,670 pages of documents to Plaintiffs, and has responded in full to each of Akoustis' eighteen (18) interrogatories. Plaintiffs are also in possession of productions from third parties IQE and Wolfspeed, including their proprietary epitaxial wafer recipes. The First Amended Complaint does not cite to a single document or interrogatory response in this fulsome production, which Plaintiffs have not alleged to be deficient.

### E. Plaintiffs Fail to Identify Facts Showing Infringement of Method Claims

The '360 patent has two independent claims (1 and 18) and 22 dependent claims. *See* Dkt. 124-1 at 7. All of the claims are method claims directed to "[a] **process for growing** an epitaxial layer on a lattice mismatched substrate." *See id* (emphasis added). Plaintiffs allege that Qorvo directly and indirectly infringes claim 1 of the '360 patent, which reads as follows:

> 1. A **process for growing** an epitaxial layer on a lattice mismatched substrate comprising the steps of:
>
> a) providing a substrate;
>
> b) pre-treating a surface of the substrate with at least one group III reactant or at least one group II reactant at an elevated growth temperature prior to introducing a group V reactant or a group VI reactant;
>
> c) introducing a group V reactant or a group VI reactant to grow a nucleation layer on the surface of the substrate; and
>
> d) growing a buffer layer on said nucleation layer, said buffer layer providing a surface upon which said epitaxial layer is grown.

While every asserted claim is directed to a **manufacturing process** for growing an epitaxial layer on a lattice mismatched substrate, the FAC does not allege any facts that would plausibly support an inference that **Qorvo** is engaged in such manufacturing. Rather, the FAC is primarily directed to allegations concerning attributes of a **product** (not a manufacturing

process) that Qorvo sells. *See* FAC, ¶¶37-53. Plaintiffs allege that attributes of the finished product are consistent with the claimed manufacturing process—e.g., Plaintiffs allege that the product includes a silicon carbide (SiC) substrate (*id.*, ¶¶40-41) and an aluminum gallium nitride (AlGaN) layer (*id.*, ¶¶43-53). Beyond these product-focused allegations, however, Plaintiffs do not allege that **Qorvo** actually performed any of the steps of the claimed **manufacturing process**. *See id.*, ¶¶36-53. Instead, at critical junctures of the FAC, Plaintiffs switch to using the passive voice—alleging that the accused products "are made" **by an unidentified party** "using a process for growing an epitaxial layer." *Id.*, ¶ 36; *see also id.*, ¶37 (QPD1000 "is made" **by an unidentified party** "using a process that grows a gallium nitride (GaN) epitaxial material on a silicon carbide (SiC) substrate").[1] Elsewhere, Plaintiffs assert that there are **third parties**—"partners and suppliers"—who "are involved in the manufacturing" of the accused products. *Id.*, ¶54. While Plaintiffs include a boilerplate allegation that Qorvo induces these third parties to perform the claimed manufacturing process, Plaintiffs do not allege any facts supporting that boilerplate assertion. *See id.*

### III.  ARGUMENT

The FAC should be dismissed under Rule 12(b)(6) because Plaintiffs failed to plausibly allege direct or indirect infringement by Qorvo under 35 U.S.C. § 271.

To survive a motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

---

[1] The carefully-worded allegations are not an accident. Many Akoustis employees worked at Qorvo and, as such, Akoustis is aware that Qorvo does not manufacture the epitaxial wafers incorporated as components into the accused products. Plaintiffs therefore cannot allege, consistent with its obligations under Rule 11, that Qorvo practices the manufacturing process of the asserted claims. Plaintiffs thus attempts to circumvent this problem by switching to the passive voice and alleging that the accused products "are made" using the claimed manufacturing process (rather than alleging that Qorvo practices the manufacturing process).

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Plaintiff need not prove its case at the pleading stage, nor do the "Federal Rules of Civil Procedure . . . require a plaintiff to plead facts establishing that each element of an asserted claim is met." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335, 1339 (Fed. Cir. 2012). Instead, the Complaint must "place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)).

### A. Plaintiffs fail to plausibly allege direct infringement

Plaintiffs' allegations of direct infringement are deficient in two respects: (1) Plaintiffs do not (and cannot) allege that Qorvo itself performs the steps of the claimed manufacturing process, and (2) Plaintiffs fail to plausibly allege that anyone—whether Qorvo or a third party—performs step b) of claim 1: "pre-treating a surface of the substrate with at least one group III reactant or at least one group II reactant at an elevated growth temperature prior to introducing a group V reactant or a group VI reactant" in manufacturing the Accused Products.

#### 1. The FAC fails to plausibly allege that Qorvo performs any steps of the claimed method

All of the claims of the '360 patent are method claims directed to a "process for growing an epitaxial layer." It is black-letter law that "[a] method claim is directly infringed only by one practicing the patented method." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993). Alleging that a person sells a product does not plausibly state a claim for direct infringement of a method claim. *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method

claims are only infringed when the claimed process is performed, not by the sale of an apparatus").

Plaintiffs first allege that Qorvo directly infringes claims of the '360 patent "by making, using, selling, and/or offering for sale in the United States or importing into the United States infringing products, including at least the Accused Products." FAC, ¶35. This boilerplate allegation of infringement does not plausibly allege that Qorvo performed the necessary steps of the '360 patent's two independent method claims.

Plaintiffs next allege—in the passive voice—that the Accused Products include an epitaxial layer made using the method of the '360 patent. FAC, ¶36. The FAC, however, is entirely devoid of any factual allegations that **Qorvo itself** manufactures the epitaxial wafers found in the Accused Products. *See id.*, ¶¶35-53. To the contrary, the FAC opaquely refers to Qorvo purchasing epitaxial wafers from "partners and suppliers" who "are involved in the manufacturing" of the accused products. *See id.*, ¶54. The failure to allege that Qorvo manufactures epitaxial wafers was not an accident. Plaintiff Akoustis—a company that employs many former Qorvo engineers—is aware that Qorvo **does not** manufacture the epitaxial wafers incorporated as components of the Accused Products and instead purchases them from independent third-party suppliers. As such, Plaintiffs do not (and cannot in good faith) allege that Qorvo performs any of the steps of the claimed "process for growing an epitaxial layer."

### 2.   The FAC is devoid of factual allegations concerning performance of step b)

The FAC also fails to plausibly allege that **anyone** performs the process claimed in the '360 patent. In particular, the asserted claims of the '360 patent require, pursuant to step b) of claim 1, "pre-treating a surface of the substrate with at least one group III reactant or at least one group II reactant at an elevated growth temperature prior to introducing a group V reactant or a

group VI reactant" and "pre-treating the surface of a substrate . . . at an elevated growth temperature." *See* FAC, ¶35. The FAC includes only two conclusory allegations related to this required feature.

First, parroting the language of the claims, Plaintiffs assert that "[t]he Qorvo Accused Products comprise pre-treating a surface of the substrate with at least one group III reactant or at least one group II reactant at an elevated growth temperature prior to introducing a group V reactant or a group VI reactant." *Id*., ¶42. But Plaintiffs provide no explanation of how an Accused Product could "comprise" a step of a method claim (*see id.*) and it is black letter law that selling a product does not constitute infringement of a method claim. *See, e.g.*, *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010) ("Because the claims asserted by i4i are method claims, Microsoft's sale of Word, without more, did not infringe the '449 patent [as] [d]irect infringement occurs only when someone performs the claimed method").

Second, with respect to the "pretreating . . . at an elevated growth temperature" requirement of step b) Plaintiffs assert, solely "[o]n information and belief," that the Accused Product "is grown by using . . . an elevated temperature." FAC, ¶44. Notably, this assertion is of pretreatment at "an elevated temperature," not "at an elevated growth temperature." Moreover, Plaintiffs fail to provide even **a single factual allegation** to support their conclusory assertion. *See id.* While Plaintiffs provide screenshots of various graphs allegedly representing features of the Accused Products (e.g., a SiC substrate, an AlGaN layer), Plaintiffs fail to explain how those screenshots are connected (if at all) with using an elevated growth temperature as part of the manufacturing process as required by the claims.[2] *See id.*, ¶¶43-51.

---

[2] In fact, in a parallel proceeding in Massachusetts, Akoustis conceded that such testing does not reveal the process (called a "recipe") used to grow an epitaxial layer, including whether the process uses an "elevated growth temperature." Dkt. 99 at 5.

As such, the FAC fails to place Qorvo on notice of what activity allegedly infringes the '360 patent. *See, e.g.*, *Chapterhouse, LLC v. Shopify, Inc.*, No. 18-cv-0300, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 10, 2018) ("While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.").

### B. Plaintiffs fail to plausibly allege indirect infringement

To state a claim for induced infringement, Plaintiffs must allege facts that would permit a plausible inference that Qorvo engaged in an act of inducement—i.e., "culpable conduct, directed to encouraging another's infringement." *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). The FAC is devoid of any such factual allegations.

Plaintiffs dedicate only a single paragraph to its claim of induced infringement. *See* FAC, ¶53. Plaintiffs summarily allege—based solely on "information and belief"—that Qorvo "indirectly infringes claims of the '360 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others." *id.*, ¶54. Plaintiffs then include a boilerplate allegation that Qorvo engaged in induced infringement by "seeking, buying, distributing, and/or otherwise having the Accused Products made, and providing instructions, documentation, technical support, marketing, product manuals, advertisements, and other information to partners and suppliers suggesting they make the Accused Products in an infringing manner." *Id*.

As a threshold matter, Plaintiffs' boilerplate allegations of inducement—reciting a generic, disjunctive list of acts that could, theoretically, qualify as inducement without any facts specific to Qorvo—is precisely the type of allegation that is impermissible under *Iqbal* and *Twombly*. *See Addiction and Detoxification Institute*, 620 F. App'x. at 938 (finding that the plaintiff did not adequately plead indirect infringement where plaintiff alleged that defendants

-10-

acted "with specific intent to urge, instruct, encourage" infringement by "causing [,] urging, aiding, or instructing others to perform one or more claimed methods of the [] patent").

Moreover, Plaintiffs' boilerplate allegations of inducement are improper (and incomprehensible) here because the '360 patent is directed to a **manufacturing process**. In this context, Plaintiffs cannot rely on generic assertions that Qorvo provides "instructions, documentation, technical support, marketing, product manuals, advertisements" concerning the Accused Products. This is not a run-of-the-mill case where a company is accused of inducement by simultaneously selling an accused product and providing customers with instructions on how to use that product. *See, e.g.*, *NXP U.S. v. MediaTek Inc.*, No. 21-cv-00318, 2022 WL 799071, at *2 (E.D. Tex. Mar. 15, 2022) ("[T]he Court finds it reasonable to infer the necessary intent to support a claim of induced infringement from NXP's allegations that Amazon simultaneously sells the products with the accused Wi-Fi chip while supplying third-parties with the cited literature which instructs performance of allegedly infringing uses of the technology."). Rather, to allege induced infringement here, Plaintiffs were required to allege specific facts plausibly supporting a claim that Qorvo induced the third party supplier(s) of a component to use a particular manufacturing process in making that component. Under these circumstances, vague and conclusory allegations that Qorvo provided "instructions, documentation, technical support, marketing, product manuals, advertisements" are not sufficient. *See, e.g.*, *S.A.R.L. v. Apple Inc.*, Case No. 14-cv-751, 2015 WL 5000397 at *4 (E.D. Tex. June 3, 2015) ("In a broad sense, the provision of instructions by an accused infringer may indicate specific intent to induce infringement. However, failing to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner, falls short of satisfying Rule 8's notice

requirement."); *American Vehicular Sciences LLC v. Mercedes–Benz U.S. International, Inc.*, 2014 WL 10291478 at *4 (E.D. Tex. Feb. 7, 2014) (dismissing induced infringement claim where plaintiff made only general allegation that defendants provided "detailed explanations, instructions and information" because "naked assertions devoid of further factual enhancement are insufficient to state a claim").

### C. Plaintiffs' Boilerplate Is Unacceptable At This Stage of the Case

As set forth above, Plaintiffs are in possession of a fulsome technical production from Qorvo and the independent third parties that sell epitaxial wafers to Qorvo. At this stage of the litigation, Plaintiffs must have either: (i) identified facts that support its infringement assertions; or (ii) concluded (as they should) that Qorvo cannot infringe the Asserted Claims. If it is the former, Plaintiffs should have stated such facts in the FAC. If the latter, Plaintiffs should dismiss this case of their own accord.

## IV. CONCLUSION

For the foregoing reasons, Qorvo respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' FAC.

Dated: August 9, 2024    Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By:  */s/ Robert M. Masters*
JENNIFER KLEIN AYERS (Texas Bar No. 24069322)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2200 Ross Ave, 20th Floor
Dallas, TX 75201
Telephone: 469.391.7400
Facsimile: 469.391.7401
jayers@sheppardmullin.com

ROBERT M. MASTERS (MD State Bar No. 14770)
JONATHAN DEFOSSE (VA State Bar No. 48220)
TIMOTHY P. CREMEN (MI State Bar No. P60000)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave, NW, Suite 100
Washington, DC 20006
Telephone: 202.747.1900
Facsimile:  202.747.3369
rmasters@sheppardmullin.com
jdefosse@sheppardmullin.com
tecremen@sheppardmullin.com

***Attorneys for Defendant Qorvo, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that, on August 9, 2024, I caused the foregoing to be served on all record counsel via the Court's CM/ECF system.

                                           */s/ Robert M. Masters*
                                           Robert M. Masters